M. C. BARKWELL ET AL. *v.* W. F. SWAN ET AL.

| 69 | 907 |
| 77 | 453 |

1. PRINCIPAL AND SURETY.   *Assignment of Mortgage.   Payment.*

Where a mortgage is given by the principal debtor to indemnify his surety, and the surety assigns it to the creditor on account of the debt, by the mere acceptance of the mortgage, the debt for which the surety is liable is not paid.

2. SAME.   *Dealing with mortgaged property.   Discharge of surety pro tanto.*

Where a mortgage is so assigned by the surety to the creditor, the improper or negligent conduct of the latter in dealing with the property mortgaged, will not release the surety from the debt, but will operate merely to discharge him to the extent of the loss sustained in consequence of the negligence or misconduct of the creditor.   *Clopton* v. *Spratt*, 52 Miss., 251.

3. TRUST IN LAND.   *Record.   Code* 1880, § 1296.   *Showing deed to be mortgage.*

In the case of a recorded deed to lands, reciting a nominal consideration, an unrecorded contemporaneous writing, showing the conveyance, though absolute in form, to be a mortgage securing certain debts, is not

condemned by § 1296, code 1880, which makes void all declarations or creations of trusts in land, unless in writing, acknowledged and recorded. The conveyance being of record, the failure to record the writing showing its real character will not affect the validity of the mortgage.

4. FRAUDULENT CONVEYANCE. *Mortgage. Debts extended. Case.·*

While ordinarily no further time should be granted in a mortgage to secure pre-existing debts than is usually required to make collections by suit, where a debtor, by way of mortgage, conveys to a trustee for certain creditors, whose debts are large, a correspondingly large amount of property, mainly wild lands, and the secured debts are extended two years, if the lands cannot sooner be sold for a named price, the secured creditors stipulating to pay accruing taxes, and none of the property being consumable in the use, the conveyance will not be declared fraudulent as to other creditors. *Bank* v. *Douglass*, 11 Smed. & M., 469, and *Henderson* v. *Downing*, 24 Miss., 106, distinguished.

5. CHANCERY PRACTICE. *General prayer. Other relief consistent with bill.*

Under the prayer for general relief, the complainant may have other relief than that prayed, if such other relief is not inconsistent with the purpose of the bill.

6. SAME. *Attaching land. Mortgage. Subjecting equity of redemption. Case.*

Accordingly, where a creditor, by attachment in chancery, seeks to subject to his debt lands of a non-resident debtor, and, as an incident, to cancel as fraudulent a conveyance by the debtor to a co-defendant, if this conveyance is shown to be a mortgage and not fraudulent, under the prayer for general relief, complainant is entitled to a decree subjecting the debtor's equity of redemption.

FROM the chancery court of Yazoo county.

HON. H. C. CONN, Chancellor.

In January, 1887, Mrs. Barkwell sold to one Jay Pettibone, for the sum of $15,000, a herd of cattle, running upon a range in Carbon county, Wyoming. Only a part of the purchase-money was paid, and for the unpaid portion Pettibone executed notes to Mrs. Barkwell, with W. F. Swan as surety thereon. Swan took from Pettibone a mortgage upon the herd of cattle as indemnity against loss on account of his suretyship.

Swan, being largely indebted to other persons, on the 28th day of April, 1888, executed a conveyance of a large quantity of land in the state of Mississippi, together with property situated in other states, to one Gilchrist. This conveyance was absolute upon its face, and the consideration recited was the nominal one of one dollar. It was duly recorded in this state in the counties in which the lands are situated. Contemporaneously with it, Gilchrist and Swan executed another writing, by which it appeared that this deed, though absolute in form, was intended as a security for the payment of debts due by Swan to other creditors, aggregating $101,466.14, and bearing interest. Among other stipulations in this writing, it was agreed and understood that Gilchrist might sell any of the lands situated in this state at any time when he could get therefor not less than $1.50 per acre, or, if that sum could not be gotten, he might sell for a less price, upon the direction of a majority of the secured creditors. It was recited that the lands were worth about $105,000. It was further provided that, unless sales at the price named should be made within two years, at the expiration of that time said lands should be sold at any price which might be realized, and the proceeds applied to the payment of the secured debts. Mrs. Barkwell was not provided for in this arrangement, because, as is alleged, it was supposed that she had ample security in the mortgage on the cattle, this mortgage being assigned to her by Swan.

It was further stipulated in the agreement that the secured creditors should keep the taxes upon the property paid up. Swan was therefore practically given an extension of two years on the debts, with the option to pay them sooner, but the trustee was required to sell at the end of two years, unless a majority of the creditors should direct otherwise. Under the terms of the instrument, the trustee was to be put in immediate control of the property, though the lands in this state were wild and unoccupied. It was shown that one of the secured creditors, in consideration of the conveyance,

gave up certain collaterals. The agreement was not acknowledged or recorded. Mrs. Barkwell, the evidence tends to show, had notice of the execution of the conveyance, and of its purpose to secure Swan's other creditors. The conveyance, it is probable, included all the property then owned by Swan, but it did not on its face purport to do so. The court holds that the conveyance, together with the written agreement accompanying it, did not constitute a general assignment by Swan, but a mortgage to secure certain named creditors.

To secure Mrs. Barkwell in the payment of her debt, Swan assigned to her the mortgage which had been executed to him by Pettibone, and thereafter Mrs. Barkwell sought to reduce to possession the herd of cattle. Many of them, it seems, had died from exposure, or had strayed from the range, and but a small proportion were recovered. These Mrs. Barkwell sold at private sale, and applied the proceeds to the payment, in part, of the debt due by Pettibone for the purchase-price.

The mortgage executed by Pettibone authorized Swan, if default should be made in the payment of the note to Mrs. Barkwell, to take possession of the cattle and sell them. There was some evidence tending to show that Swan consented to a private sale of the property.

Claiming a balance due of about $12,000 on the notes executed to her by Pettibone and Swan, Mrs. Barkwell exhibited her bill in this case in the chancery court of Yazoo county, and secured an attachment of the lands in this state. Swan and Gilchrist were made parties defendant. The bill sought to cancel the conveyance of the lands from Swan to Gilchrist as fraudulent and void, it being alleged that the same was executed with intent to hinder and delay the creditors of the grantor.

Defendants answered the bill, denying the material allegations thereof and asserting the validity of the conveyance from Swan to Gilchrist. The complainant contended that

the instrument of writing executed contemporaneously with
the deed was the declaration or creation of a trust in lands,
and, as the same was not acknowledged and filed for record
in the proper counties, it was void under § 1296, code of 1880.
Complainant also contended that the conveyance and said
instrument of writing, when taken together, constituted an
assignment by Swan, an insolvent, and operated to hinder,
delay and defraud creditors, and was therefore void.

On behalf of defendants, it was contended that the instru-
ment of writing, executed with the deed, made the transac-
tion a mortgage, and it was insisted that the same was valid.
They contended that the assignment to Mrs. Barkwell, by
Swan, of the mortgage executed by Pettibone, incumbering
the cattle, was a discharge of Swan's liability on the notes.
It was also contended that Swan was discharged from liabil-
ity on the notes because of the negligent failure of Mrs.
Barkwell to reduce to possession the mortgaged cattle, and
because of her failure to deal with those taken into posses-
sion according to the terms of the mortgage.   Much testi-
mony was taken by the respective parties, tending to show,
on the one hand, that Mrs. Barkwell had exercised reasonable
diligence in dealing with the mortgaged property, and on the
other tending to show the loss of many of the cattle as at-
tributable to her neglect.

The case was heard on bill, answer and proofs, and the court
held that complainant was not entitled to relief, and entered
a decree dismissing the bill, from which complainant appeals.

The opinion contains a further statement of the facts nec-
essary to an understanding of the questions decided.


*Calhoon & Green,* for appellant.

1. The mortgage of Swan to Pettibone secured the *debt,*
and, hence, was, in equity, available to Mrs. Barkwell with-
out an assignment.   *Pool* v. *Doster,* 59 Miss., 258.

2. Swan was insolvent, and, hence, the conveyance of 102,-
000 acres of land for the consideration of $1, was *prima facie*

fraudulent and void. *Cock* v. *Oakley*, 50 Miss., 628; *Hodges* v. *Hickey*, 67 *Ib.*, 715.

The burden of proof was on the grantees to show the validity of the conveyance. *Richards* v. *Vaccaro*, 67 Miss., 516.

3. The agreement, being an express declaration of a trust in lands, and not acknowledged or recorded, is void. Code 1880, § 1296.

The English statute of frauds, and that of every state in the union except Mississippi, declares that if express trusts are manifested in writing, they shall be valid, but our state makes the additional requirement that they shall be acknowledged and recorded. No exception will be ingrafted on the statute. *Gumbel* v. *Koon*, 59 Miss., 264. See, also, *Quin* v. *Myles*, *Ib.*, 375.

Prior to the code of 1857, parol trusts in land were valid. *Anding* v. *Davis*, 38 Miss., 574. This was changed by the code of 1857. The rule has since continued. Code 1871, § 2896; Code 1880, § 1296.

Actual notice of the agreement would not take the place of recording. Besides, the answer does not aver that complainant had notice; nor does the proof show such notice. As to this, see *Buck* v. *Paine*, 50 Miss., 648; *Tuteur* v. *Chase*, 66 *Ib.*, 476; Wade on Notice, § 13.

If §§ 1212 and 1213 of the code of 1880, relating to registrations, were silent as to notice, the fact of notice would have no influence in their interpretation. But § 1213 of the code cannot be applied to help out § 1296. If so, any two chapters of the code can be considered together. Besides, § 1212 deals with ordinary deeds, the execution of which the law encourages, and § 1296 deals with declarations of trust, which are discouraged.

*Klein* v. *McNamara*, 54 Miss., 90, has no application. Section 1299, code 1880, was enacted after that decision, to restrict the grounds upon which absolute deeds could be declared mortgages. *Loughridge* v. *Bowland,* 52 Miss., 546,

relied on in the court below, does not apply.    It is a decision on the registry acts.

4. The trust agreement is void, because it hinders, delays and defrauds creditors.    It is an assignment whereby the property is to be kept in the hands of the trustee for two years without power of disposition, except at a named price fixed by the debtor.    The trustee was to take immediate possession and hold the property during the two years—in mortmain, so to speak.

5. If the instrument is treated as a mortgage to secure pre-existing debts, it is void, because no further time should have been granted than the usual period for collecting debts by law.    *Bank* v. *Douglass*, 11 Smed. & M., 469; *Henderson* v. *Downing*, 24 Miss., 106; *Richardson* v. *Stapleton*, 60 *Ib.*, 97.

This trust instrument is not a mortgage, because there is no condition.    It contemplates payment only from the *property* conveyed.    The trust is to be worked out to pay these debts. The power of sale is absolute, and must be exercised.    In case of a mortgage, the grantor continues owner of the property, and he is primarily bound for the debt.

6. In any event, it was error to dismiss the bill, for Swan had an equity of redemption in the lands, and this was subject to complainant's debt.

*Nugent & Mc Willie*, for appellees.

An absolute deed may be shown to be a mortgage.    Prior to the code of 1880, the right to do so was not subject to the restrictions against parol evidence.    On this point, see 12 Smed. & M., 608; 13 *Ib.*, 440; 23 Miss., 378; 31 *Ib.*, 426; *Anding* v. *Davis*, 38 *Ib.*, 574; *Weathersly* v. *Weathersly*, 40 *Ib.*, 462; *Littlewort* v. *Davis*, 50 *Ib.*, 403; *Freeman* v. *Wilson*, 51 *Ib.*, 329; *Klein* v. *McNamara*, 54 *Ib.*, 90.

It is well settled that the grant may be in one instrument and the condition in another.    Jones on Mor., § 242; 4 How. (Miss.), 317; 23 Miss., 206.

Complainants had sufficient notice of the written instrument. Jones on Mor., § 580; Wait on Notice, § 30.

The statute of frauds in the code of 1880 is the same as that in the code of 1857, with the addition of §§ 1299, 1300. Actual notice has always been treated as the equivalent of registration. See *Humphreys* v. *Merrel*, 52 Miss., 92, and authorities above cited. See also Wade on Notice, §§ 231, 238, 253.

If the creditor, prior to attachment, has actual notice of the separate unrecorded instrument, expressing the conditions of the recorded conveyance of the legal title, this is sufficient. 5 Mass., 450; 7 Pick. (Mass.), 157; 38 Me., 447; 7 W. & S. (Pa.), 335; 84 Pa., 363; 47 Texas, 165.

The transfer is free from all suspicion of fraud. But, even if the grantor had designed to perpetuate a fraud, the transaction will stand, unless the creditors are shown to have participated in such design. They assumed the obligation to pay the taxes on the land, besides, at least one of them surrendered collateral security. *Craft* v. *Bloom*, 59 Miss., 69; *Anderson* v. *Lachs, Ib.,* 111.

The transfer in question is not a general assignment, and not subject to the strict rules applicable to such instruments. The lands attached as those of Swan are no longer his, and cannot be condemned and sold. Complainants cannot claim relief upon the idea of Swan's having an equity of redemption, for they have not proceeded for the subjection of that.

Argued orally by *M. Green,* for appellant, and *T. A. Mc-Willie*, for appellees.

Woods, J., delivered the opinion of the court.

1. The transfer of the mortgage made by Pettibone to Swan, and its acceptance by Mrs. Barkwell, did not operate to pay the debt thereby secured. We think it clear that this mortgage security was available to Mrs. Barkwell for the payment of the debt due her.

We do not agree that, by the course of dealing with the property mortgaged, Mrs. Barkwell is to be held to have relinquished all demand for any deficiency in the sum realized by sale of the property. The improper or negligent conduct · of Mrs. Barkwell in dealing with the property after the transfer of the mortgage security to her, if such there was, whereby the property was lost or its value impaired, will diminish her right to a recovery on the original obligation to the extent of the loss or impairment in value sustained, and the surety, Swan, discharged to that extent. She must bear any loss resulting from any illegal or negligent conduct on her part after taking charge of the mortgaged property, whereby the same was either wholly lost or its value impaired. The question is thus one of accounting, and the rights of the parties in this particular will be made manifest upon a proper accounting. *Clopton* v. *Spratt*, 52 Miss., 251.

2. The contention of counsel for appellants that the conveyance in trust from Swan to Gilchrist is void, under § 1296, code of 1880, is not sound. The conveyance of the lands to Gilchrist from Swan was properly acknowledged and recorded, and it is through this conveyance—absolute on its face, but shown, not by parol, but by another instrument executed contemporaneously therewith, to be really a mortgage—that title is conveyed to Gilchrist. The agreement entered into contemporaneously with the conveyance was the evidence of the fact that the conveyance, though absolute on its face, was, in effect, a mortgage. The conveyance was acknowledged and recorded; the mere evidence of the real character of the conveyance was not recorded.

It is sufficient, we think, to say that the only change made in our law since the many adjudications holding that a deed, absolute on its face, may be shown to be a mortgage, is that provision of our code of 1880, § 1299, which declares that a conveyance or other writing, absolute on its face, when the maker parts with the possession of the property conveyed by it, shall not be proved, at the instance of any of the parties,

by parol evidence, to be a mortgage only, unless fraud in its procurement is the issue to be tried. This change in our law, designed to cut off the temptation to perjury by oral evidence trumped up for the occasion, does not touch the evidence offered in this case to show the conveyance is a mortgage. The proof is by a writing executed contemporaneously with the conveyance.

3. The conveyance is not void because, as interpreted in the light of the writing executed contemporaneously, it hinders, delays and defrauds creditors. While the remarks of the court in the cases cited and relied upon by appellants' counsel (*Bank* v. *Douglass*, 11 Smed. & M., 469, and *Henderson* v. *Downing*, 24 Miss., 106), support the position that no further time should have been granted in a mortgage to secure pre-existing debts, than the usual period required in collections made by law, yet this remark is not potential in determining the case in hand. Here, two years is the period of extension given in the mortgage; the property consists of nothing consumable in use; and the absolute possession is taken from the grantor and given to the grantee. In the two cases named, the facts are far different. Besides, at the time when the opinions referred to were delivered, the unfavored creditors were powerless to take any step looking to the subjection to their demands of any interest of the grantors in the property conveyed. Under our statutes as existing at present, the unsecured creditor may move and secure sale of the grantor's equity of redemption. This, itself, must be regarded as modifying the doctrine announced in those cases as to extensions of time, and upon which appellant relies.

4. The equity of redemption of Swan should have been subjected to complainant's demands, as the same may appear upon an accounting. The complainant's bill sought to subject to the payment of her demand against a non-resident debtor, lands of that debtor lying in this state; and, as an incident thereto, prayed the cancellation of the conveyance to Gilchrist by Swan, as fraudulent upon its face. She sought

to subject the whole of the lands as being Swan's, after cancellation of a deed, apparently fraudulent. But she is met by respondents, who satisfactorily show the deed is really a mortgage, and, therefore, not fraudulent and void. The respondents make it. clear that the absolute ownership in the lands is not in Swan, but that he has only the equity of redemption in.them. The complainant cannot have all that she sought, but she should not be denied that which she is entitled to, if the same can be fairly said to be embraced in the frame of the bill, and in the scope of the relief prayed.

If, under the prayer for general relief, the complainant may have other relief than that specifically prayed, not inconsistent with the purpose of the bill, it appears to us that she should be allowed to subject to any just demand of hers Swan's equity of redemption. We adopt this course in the present case with no hesitation, because it is impossible to say that it can surprise the respondents, or injuriously affect them or others.

*Let the decree below be reversed and the cause remanded, to be further proceeded with in accordance with this opinion.*