SIMON R. KENDRICK ET AL. *v.* BARNEY E. KYLE.

1. LAWS OF OTHER FORUMS. *Criminal statutes. Comity.*

Comity does not require one state or nation to enforce the criminal statutes of another.

2. SAME. *Usury. Laws of Tennessee.*

Notwithstanding the statutes of Tennessee (code Tenn., 1884, § 270) provide that interest in excess of six per centum per annum is usurious, and (code Tenn., 1884, § 5623) makes the exacting of usury a criminal offense, yet a note made and payable in that state, bearing eight per centum per annum on its face, secured by lien on lands in this state, where such a rate is legal, will be enforced here.

3. SAME. *Laws of Tennessee,* 1897, § 149. *Ib.,* 227.

The act of the Tennessee legislature validating such a note, so secured, approved March 19, 1897, inured to the benefit of a citizen of this state who had acquired the note and sued here to enforce the l en securing it, although the suit was begun before the passage of the act.

4. SAME *Repeal. Code of Tennessee,* 1884, § 47.

The repeal, pending a suit, of the Tennessee statute approved March 19, 1897, vitalizing certain usurious contracts (laws Tenn., 1899, p. 320), does not deprive a complainant of its benefits, under the terms of Tennessee code, 1884, § 47, providing that "the repeal of

a statute does not affect any right which accrued . . . under and by virtue of the statute repealed."

5. PROMISSORY NOTES. *Pleading. Indorsement. Code* 1892, § 1797.

The holder of a note given for land, payable to a railway company, which assigned it to another railroad, and who acquired the paper under a blank indorsement of the latter company by its land commissioner, may recover thereon, the indorsement to the holder not being denied under oath, as required by code 1892, § 1797.

6. SAME. *Indorsement by holder. Burden of proof.*

Where the complainant has the possession of and sues upon a note indorsed in blank, the burden of proving his want of interest in the paper is on the defendant, although it contains a subsequent indorsement by the complainant to another.

7. SAME. *Striking out indorsements.*

The holder of a note, indorsed in blank, who has indorsed it to another, may strike out his own indorsement before or after suit, or he may sue and recover as holder without striking out same.

FROM the chancery court of Bolivar county.

HON. A. Mc. KIMBROUGH, Chancellor.

Kyle, the appellee, was the complainant in the court below; Kendrick and others were defendants there. The suit was instituted December 26, 1896, and the purpose was to enforce a purchase money lien on the land involved. The facts were these: The Louisville, New Orleans & Texas Railway Company sold the lands on credit in 1886 to defendant, Kendrick, who gave his notes for the purchase money to said railway company. The notes were executed at Memphis, Tenn., and were payable there to the railway company. They bore on their faces eight per centum interest per annum. A lien was reserved on the lands in the deed from the railway company to Kendrick, to secure the notes. The Louisville, New Orleans & Texas Railway Company transferred and assigned the notes to the Yazoo & Mississippi Valley Railroad Company, and they were indorsed as follows: " Yazoo & Mississippi Valley Railroad Company, by G. W. McGinnis, land commissioner." " Transferred to R. M. Kyle, guardian, as collateral security

to secure note due him as guardian for Barney E. Kyle, February 8, 1895.     Burbridge & Houston.''     ''Transferred, without recourse, to T. T. Bryant, guardian.     R. M. Kyle, guardian.''

The answer denied that complainants owned the notes, and by an amendment thereto, filed September 13, 1898, it was pleaded by way of defense that the notes were usurious, under the laws of Tennessee, upon their face and not enforceable. The Tennessee statutes of 1897, to which references are made, are given in the note hereto.*

A final decree was rendered in the court below on the sixteenth day of September, 1899, and defendant appealed to the supreme court.

*Mc Willie & Thompson*, for appellants.

Opposing solicitors claim that the indorsement by the complainant to Bryant, appearing on the note, is of no consequence, and they assert that possession of the note by Kyle, the complainant, proves his right to sue upon them, and they cite, among other cases therefor, the case of *Welch* v. *Lindo*, 7 Cranch, 159.    If ever a case was wrongfully cited, this is the one.    The court in that case decided that the indorsement by

---

*The Tennessee statutes to which references are made by court and counsel are, so far as they relate to the controversy involved, as follows:

Act of March 9, 1897: "*Be it enacted by the General Assembly of the State of Tennessee.* That § 1950 of the code of Tennessee, the same being § 2107 of Milliken & Vertrees' compilation, be, and the same is hereby, so amended that a defendant sued for money may in all cases avoid the excess over legal interest by a plea setting forth the amount of the usury, and this shall be the rule whether the usury appear on the face of the note or other contract sued on or be shown by testimony *aliunde*—that is to say, none of the courts of this state shall dismiss any suit on a note or other contract for money because it shows on its face that the parties have contracted for an unlawful rate of interest, but all of such contracts are hereby declared to be valid and enforceable to the extent of the amount actually loaned, with interest thereon at the rate of six per cent. per annum, and in all cases where usury is the only defense pleaded, judgment shall be rendered by the courts of this state for said amount with legal interest, whether usury appear on the face of the contract sued on or no." (This act was repealed April 6, 1899.)

Act of March 19, 1897: "Section 1. *Be it resolved by the General Assembly of the State of Tennessee.* That it shall hereafter be lawful in all cases where money is loaned in this state, and is secured wholly by mortgage or trust deeds on property, real or personal, situate in some other state, for the lender to contract for any rate of interest, not to exceed the rate allowed by the law of the state where the property pledged as security is situated.     Sec. 2. *Be it further enacted*, That in all cases of loans heretofore made in this state, and wholly secured by mortgage or trust deed on property, either real or personal, situated in some other state, it shall be lawful for the lender to collect the amount loaned with interest at the rate contracted for, provided said rate does not exceed the rate of interest allowed by the law of the state where the property pledged as security is situated.     (This act was repealed April 18, 1899.)

Section 61 code of Tennessee (Shannon's) is quoted in the opinion of the court.

the plaintiff appearing on the note proved that he could not maintain the action. In support of the idea that the indorsement to Bryant, yielding every other point raised on the subject of his title to the notes, defeats the complainant, we desire the court to read the following authorities: *Thompsom* v. *Flower*, 13 Martin (La.), 361; *Sprig* v. *Cuny*, 19 Martin (La.), 253; Story on Promissory notes, sec. 247. We recognize that there are authorities to the contrary, but we cannot find that the exact question has ever been decided in this state. We trust that the court will decide it. We are quite sure that the weight of reason is with us, and that the Mississippi decisions which are analogous tend to our conclusion.

The laws of Tennessee fixed six per cent as the legal rate of interest, and no greater rate can be rightfully contracted for. If a greater rate be contracted for, and the same appear on the face of a written contract, or if a plaintiff could not establish his contract without showing usury, the courts of that state would deny all relief to the holder of the notes, and was bound, according to the public policy of the state, to dismiss the suit. As was said by the Tennessee courts: "If usury shall appear on the face of a contract, or if it be made to appear by the plaintiff in stating his case, it is the duty of the court, on grounds of public policy, to dismiss it." *Isler* v. *Brunson*, 6 Humphries (Tenn.), 277; *Thompson* v. *Collins*, 29 Head (Tenn.), 441; *Causey* v. *Yeates*, 8 Humphries (Tenn.), 605; *Bank* v. *Maun*, 94 Tenn., 22, s.c. 27 S. W. Rep., 1015; *Bang* v. *Phelps*, 96 Tenn., 661, s.c. 34 S. W. Rep., 516.

A contract which is illegal or inoperative where made, and on which no recovery can be had in the courts of the country where it was entered into, because of its invalidity, is illegal or inoperative everywhere. The courts of Mississippi will not enforce a contract which is contrary to the public policy of the state where it was made if the courts of that state will not enforce it. *Brown* v. *Freeland*, 34 Miss., 181; *Carroll* v. *Renich*, 7 Smed. & M., 798; *Ivey* v. *Lalland*, 42 Miss., 444;

*Murdock* v. *Columbus Insurance Co.*, 59 Miss., 152; 2 Parsons on Contracts, 570; *Teal* v. *Walker*, 111 U. S., 242-252 (doctrine announced on page 252); Webb on Usury, sec. 256, p. 289; *Ib.*, sec. 268, p. 302; Rorer on Interstate Law, 45 *et seq.* (see 47th page).

Under the laws of the state of Tennessee at the time when the notes in suit were executed, when this suit was instituted and when the final decree herein was rendered, the notes themselves were so illegal, as shown upon their faces, that no court of Tennessee would have granted relief upon them or rendered judgment in favor of any holder of them. The act of the Tennessee legislature, approved March 9, 1897 (acts of Tennessee, 1897, p. 227), was repealed April 6, 1899 (acts of Tennessee, 1899, p. 320), and the Tennessee act of March 17, 1897 (acts of Tennessee, 1897, p. 149), was repealed by the act of the said legislature, approved April 18, 1899 (acts of Tennessee, 1899, p. 735).

The acts of the legislature of the state of Tennessee, passed March 9 and 17, 1897, if constitutional, certainly (aside from their repeal) are not controlling in this case, for the following reasons:

1. It cannot be possible that an act of the legislature of the state of Tennessee passed after the institution of this suit can take away a defense. Lawsuits are determined, generally speaking, by the rights of the parties as they existed when the suit was begun. A plaintiff must have a cause of action when his suit is begun, and, generally speaking, his cause of action must continue in him until the trial, and he must show a right to recover when judgment is reached. *Laurissini* v. *Doe*, 25 Miss., 177; Adams on Ejectment, 32. It cannot be possible that the legislature of the state of Tennessee can take away from a Mississippi litigant a valid defense which existed when this suit was brought.

2. The act of March 9, 1897 (acts of Tennessee 1897, p. 227), is not applicable to this suit, because by its terms it an-

nounces a mere rule of procedure for the government of Tennessee courts. It provides a rule of pleading for those courts, and directs the courts of that state to dismiss suits, etc. What contracts are referred to in the act as "such contracts?" Clearly contracts sued upon in Tennessee: but if this be too technical, and if "such contracts" be held to embrace usury contracts, yet they are validated only to the extent of the amount actually loaned, thus showing that "such contracts," if given a broader meaning, do not embrace the notes sued upon which were given for land and bore unlawful interest after their dates. And, again, the act of March 9, 1897, only applies to cases where the only defense pleaded is usury. That is not this case, since we defend upon the ground of want of title in complainant to the notes, as well as upon grounds of usury. But as before said, the act has been repealed before final decree. Acts of Tennessee, 1899, p. 320, ch. 172. If the legislature had power to breathe life into invalid notes after suit has been brought upon them, it surely had power, before final judgment was reached, to withdraw its support and to leave the parties where they stood when the suit was instituted.

The act of March 17, 1897 (acts of Tennessee 1897, chs. 23, 149) did not apply to this case. The first section thereto is prospective only, and simply authorizes the loaning of money on real estate in other states. The second section professes only to validate contracts between lender and borrower, and makes no reference whatever to other usurious contracts, contracts in which illegal interest was stipulated for in consideration of the forbearance of a debt contracted for property or otherwise. But this act itself hath been repealed, as before stated, and if it were by its terms applicable to the case at bar, the repeal of it before final decree removes it from consideration.

The Tennessee acts of 1897, undertaking to legalize and authorize the prosecution of suits on a class or classes of usurious contracts, are clearly unconstitutional. They violate section 7,

article 11, constitution of Tennessee, 1870, providing: "The legislature shall fix the rate of interest, and the rate so established shall be equal and uniform throughout the state; but the legislature may provide for a conventional rate of interest, not to exceed ten per centum per annum."

Section 61, Tennessee code, cannot have extra-territorial effect, and, besides, the present suit was not commenced "under and by virtue of the statute repealed." The section was not part of any contract. It relates only to matters of remedy. The appellee is driven into a strange position. To make anything of the section (61, Tennessee code), he must plant himself on the idea that the acts of 1897 are remedial, because the Tennessee legislature can no more grant a right, as distinguished from a remedy, than it can deprive a litigant of one. If the Tennessee acts of 1897 are purely remedial, they relate only to Tennessee remedies. It cannot be possible, after the beginning of a Mississippi lawsuit, that the legislature of Tennessee can confer such a right upon one of the litigants and at the same time deprive itself of all power to take away what it has thus given.

The complainant's final decree cannot be maintained upon the idea advanced by opposing counsel that the deed evidences a Mississippi contract which our courts will enforce. Nor can the complainant recover as upon a *quantum meruit* for the value of the land. In the first place, the complainant, Kyle, never owned the land or executed the deed. He has no connection with the land or deed save through the pretended indorsement to him of the notes. He connects himself with the transaction only through said indorsements. The courts of Tennessee have decided that persons to whom usurious notes have been indorsed cannot maintain an action on the original consideration for which the notes were given, because the indorsements are transfers of the notes, and not of the cause of action on such original consideration. *Bang* v. *Phelps*, 96

Tenn., 361, s. c. 34 S. W. Rep., 516; *Bank* v. *Maun*, 94 Tenn., 22, s. c. 27 S. W. Rep., 1015.

If it be said that Kendrick ought not to keep the land and refuse to pay for it, we answer that when our vendor calls for payment there will be force in the suggestion, but until he does no one else can complain.

*Moore & Clark*, for appellees.

The decree rendered by the chancellor was correct. The contract was not usurious or void under the laws of the state of Tennessee, notwithstanding the fact that it was made there and payable there and bore interest at eight per cent. The contract is one for the purchase of real estate in the state of Mississippi.

Under the acts of the legislature of the state of Tennessee of 1897, it is provided that all contracts shall be binding in their stipulations for interest at greater rates than that allowed by the laws of Tennessee, where the contract is one for loan of money based on lands or in other property as collateral in another state, and provided the rate of interest does not exceed that allowed by the state where the property is located. The former laws of the state of Tennessee did not render the entire contract void. We are entitled to recover the principal of the debt sued for with eight per cent interest, since that is the contract recognized by the deed itself, which does not purport to be a Tennessee contract at all.

Nachmam, having purchased the lands subject to the claim for the unpaid purchase money, will be considered as having agreed to pay the full amount of these claims as a part of the purchase price of the lands, and on this line Mr. Pomeroy lays down the doctrine as well settled that he cannot take advantage of usury in the mortgage debt or the vendor's lien notes, to defeat the collection of that claim. "The doctrine is therefore generally settled, that where land subject to a usurious mortgage is conveyed to a grantee who assumes the payment thereof

as a part of the consideration of the conveyance, he cannot set up the usury, either as a defense to the foreclosure or as a ground for the cancellation of the security." 2 Pom. Eq. Jur., sec. 937 and notes.

It must be remembered that Nachmam is not a second mortgagee, but that he is a purchaser of the real estate, taking it subject to the prior rights of the lien holders, and especially subject to the rights of Kyle as holder of the unpaid purchase money.

There is no evidence whatever in the record that Kyle is not the owner of the notes sued on, and the defendants have made no proof of this allegation, and have attempted to make no such proof. On the contrary, it is part of the record that Kyle is in possession of the notes, asking the court to enforce their payment by a foreclosure of the lien. This possession and control of the notes by Kyle must be accepted conclusively as proof of his right to the notes until evidence to the contrary has been introduced. The fact that there appears an indorsement on the notes to some one else does not affect the question at all.

The indorser of a note, upon again coming into possession of it, may maintain an action on it in his own name without producing extrinsic evidence of his ownership. *Welch* v. *Lindo*, 7 Cranch (U. S.), 159; *Dugan* v. *U. S.*, 3 Wheat., (U. S.), 172.

"According to the weight of authority, a person who comes into the possession of a note after having indorsed it, whether for value or not, is regarded, unless the contrary clearly appear, to be the owner of it, and is entitled to recover on it, regardless of the indorsements. Wood's Byles on Bills, 158, and note 6 thereto; *Pond* v. *Storrs*, 13 Conn., 412; *Kerschner* v. *Conklin*, 40 Conn., 77.

*Leland L. Pearson*, on the same side.

Under chapter 23 of the Tennessee acts, 1897, the contract

was an enforceable one. The Tennessee legislature purged the otherwise illegal contract and made it lawful and enforceable. The subsequent repeal of this statute did not and could not take away the vested right. This conclusion, we think, is correct upon principle; but, whether it be or not, it is certainly so by reference to the general saving statute found in code of Tennessee.

Under chapter 23 of Tennessee acts of 1897 the notes are enforceable to extent of principal and six per cent. interest. And this is so, notwithstanding the repeal of this act in 1899, because of the general saving statute above referred to.

There can be no doubt that the legislature can validate a usurious contract. 27 Am. & Eng. Enc. L., 936, 937, and authorities there cited. But, having done so, and the then lawful contract having become a vested right, it cannot impair or destroy it.

The plea of usury is a personal one, and Kendrick cannot plead same for reasons above stated, and, again:

(*a*) Kendrick had no interest whatever in the lands, having sold same to one Nachmam.

(*b*) Nachmam takes subject to prior incumbrance, and cannot himself plead usury. 27 Am. & Eng. Enc. L., 952, and authorities there cited.

Usury has not been sufficiently pleaded. 27 Am. & Eng. Enc. L., 1040–1044.

The statute does not avoid the debt, but makes usury a misdemeanor. It is for this reason that courts of Tennessee will not enforce the contract. This being true, and the contract itself not being void, the courts of other states will not repel this complainant, especially since he is a resident, not of Tennessee, but of the state whose courts have been appealed to for remedy. 27 Am. & Eng. Enc. L., 296, *et seq.* Where contract is not made void by express statute, an injunction restraining sale will not be granted, and, for same reason, relief should not be granted defendant here, by analogy, except upon

payment of principal and lawful interest. 27 Am. & Eng. Enc. L., 1036.

Argued orally by *R. H. Thompson*, for appellant, and by *Leland L. Pearson*, for appellee.

CALHOON, J., delivered the opinion of the court.

On December 29, 1896, appellee, Barney E. Kyle, through his guardian and next friend, R. M. Kyle, filed his original bill in chancery to enforce a vendor's lien on land to pay two promissory notes of which he was assignee and holder. These notes were made in Tennessee, payable in Tennessee, and on their faces bore 8 per centum per annum interest from their date. It is objected that these notes, being governed by the laws of Tennessee, the place of the contract, show usury on their faces, and are void by those laws, and nothing can be recovered on them, either of principal or interest. This is not sound. Code (Tenn.) 1884, § 270, provides that interest is demandable to the amount of "$6 for the use of $100 for one year, and every excess over that rate is usury." This section does not declare any forfeiture, or contain any announcement that the contract for such excess shall avoid the principal, or even the legal part of the interest; but in the criminal law department of that code (§ 5623) usury is made an offense, and a penalty prescribed. Because usury is so made an offense, the courts of Tennessee have uniformly held that an instrument showing usury on its face is not enforceable, and that an action on it will be dismissed. But it does not follow that the courts of other states will do the same. There is no principle of comity requiring one state or nation to enforce the criminal statutes of another; and on this very question of usury, see 27 Am. & Eng. Enc. L., 936, 937. For cases precisely in point, see *Sherman* v. *Gossett*, 4 Gilman, 521; *Lindsay* v. *Hill*, 22 Am. Rep. (Me.), 564; *Barnes* v. *Whittaker*, 22 Ill., 606; *McFadin* v. *Burns*, 5 Gray, 599.

Even if this view were not sound, the rights of complainant

in the original bill are fixed by the act of the legislature of Tennessee (acts 1897, pp. 149, 150), which provides that "in all cases of loans heretofore made in this state, and wholly secured by mortgage or trust deed on property, either real or personal, situated in some other state, it shall be lawful for the lender to collect the amount loaned with interest at the rate contracted for, provided said rate does not exceed the rate of interest allowed by the law of the state where the property pledged as security is situated." In the case at bar the land securing the notes is situated in Bolivar county, Miss., and the deed of conveyance expressly stipulates that it shall "have the full force and effect of a mortgage, with full power of sale," to secure the payment of the notes. It is true the statute referred to was enacted March 19, 1897, after suit was instituted in this cause, and that it was repealed April 18, 1899, before final decree therein. The effect of this will be hereinafter considered. On March 9 (acts Tenn., 1897, p. 227), the legislature, at the same session of the enactment of the statute above mentioned, passed another act of like purport, referring to the legal rate of interest in Tennessee, and referring to her courts, by which it is provided that "a defendant sued for money may, in all cases, avoid the excess over legal interest by a plea setting forth the amount of the usury, and this shall be the rule whether the usury appear on the face of the note or contract sued on, or be shown by testimony *aliunde*; that is to say, none of the courts of this state shall dismiss any suit on a note or other contract for money because it shows on its face that the parties have contracted for an unlawful rate of interest, but all such contracts are hereby declared to be valid and enforceable to the extent of the amount actually loaned, with interest thereon at the rate of six per cent. per annum, and in all cases where usury is the only defense pleaded, judgment shall be rendered by the courts of this state for said principal amount with legal interest, whether usury appear on the face of the contract sued on or not." The two acts are precisely similar,

and our citizens in our own courts are clearly entitled to the full benefit of both. Now, while both of these statutes were passed after the suit brought in the case at bar and repealed before final decree, still the supreme court of Tennessee makes plain the principles applicable to rights acquired and lost under both.

Before the last act was passed, a bill had been filed in a chancery court of Tennessee to foreclose a mortgage showing usury on its face, and for that reason it had been dismissed by the court. After the act was passed the complainant proceeded again, and the supreme court sustained the complainant. Held, that the act vitalized her claim to the extent of the principal and legal interest, and that the repealing act did not divest or affect her rights vested by the vitalizing act, and that the former decree of dismissal for usury apparent was not *res adjudicata*, because the merits were not involved. It will be noted that the repealing act was passed April 6, 1899, and while the case was on submission in the supreme court. The court rested its decision on the point that the act of repeal could not divest the rights given by the vitalizing act under Shannon's code, § 61 (the same as code 1884, § 47), in these words: "The repeal of a statute does not affect any right which accrued, any duty imposed, any penalty incurred, nor any proceeding commenced under and by virtue of the statute repealed." The Tennessee supreme court holds in the case referred to that Tennessee usurious contracts are not void except in the sense that they are unenforceable, and that, notwithstanding the usury, the debt remained, and suit might always be brought on the original consideration by an original party to the contract. *Wallace* v. *Goodlett*, 58 S. W., 343.

It seems quite plain from the reasoning of the Tennessee court in that case that it would never have dismissed the bill in the case before us. Aside from its reasoning, the statute expressly forbade its doing so. But for the statute, it would have dismissed it, not because of any legislative act declaring

the instrument void, but because the courts, on account of a criminal statute, had declared it unenforceable, and it should be dismissed in the interest of the public policy arising out of the criminal statute. But the legislature of Tennessee, which controls the courts, reversed this public policy and ordered that such cases should not be dismissed. It would be strange indeed if Mississippi courts, in dealing with our own people, should adhere to a Tennessee public policy repudiated and reversed by her own legislature, and the case at bar must be governed by the Tennessee law, the contract being perfectly valid by our own law. It follows that the position is untenable that complainant should not recover because he brought his suit before the vitalizing act of Tennessee was passed. It is not tenable from the reasoning of the Tennessee case, *supra*, not tenable from the acts themselves, both of which operate to complainant's benefit, and not tenable from the cases of *Bain* v. *Savage*, 76 Va., 904; *Johnson* v. *Utley*, 79 Ky:, 72; *Nich-olls* v. *Gee*, 30 Ark., 136, and divers others unnecessary to be cited. The second Tennessee acts forbids any court to dismiss any suit because usury appears on the face of the instrument sued on. The defendant is not concerned upon any right he has. The whole matter is between the complainant and Tennessee, and that state removed the restriction upon his right. If the original Tennessee usury act had declared usury contracts utterly void, as our own statute declares gambling contracts to be, the Tennessee decision might have been different. But usury contracts in Tennessee were never void by declaration of any statute. Her courts simply held them unenforceable where they showed usury on their faces, because of the criminal penalty. The real contract behind the written instrument, showing usury, was always suable in equity by an original party, although his assignee of the paper showing the usury could not. But the new statute, *supra*, reversed the whole policy of the state, and validated such contracts. It is not a question of legal title which complainant must have at the be-

ginning and the end of his suit.     It is the very different ques-
tion of legislative vitality.     What a bald absurdity it would be
for a chancellor to say: "You must go out of court, because,
when you came in, the public policy of Tennessee was to dis-
miss your case; but, inasmuch as that state has reversed her
public policy since you came in, you can sue again to-mor-
row."     Whatever view may be entertained of the soundness
of the Tennessee decisions, we must be controlled by them.
What is fish with them must not be stone with us against our
own people.

While it would not perhaps make the case any stronger, it is
true in the case at bar that, while the suit was brought before
either of the vitalizing acts was passed, it was not only not dis-
missed by the Mississippi court, even if it could properly have
done so, but the defendants never set up the defense of usury
until after that act was passed, and long after they had an-
swered, and then in an amended answer.     So far as the defend-
ant, Nachman, is concerned, he being the purchaser of the mort-
gaged land, subject to the recorded mortgage, the Tennessee
courts would not allow him to set up usury, though ours would.
*Nance* v. *Gregory*, 6 Lea, 343–346.     And it must be noted that
the bill does not seek any personal recovery from anybody on
the notes, but simply sale for payment.     There is a Tennessee
case (*Garrity* v. *Cripp*, 60 Tenn., 86) which would seem to
make it a *quære* whether the notes here, being for the purchase
of land on long time, are usurious, but it need not be relied
upon, and so need not be discussed.     See, also, *Brown* v.
*Gardner*, 67 Tenn., 147.

Recurring to the original bill, the notes as to which the lien
is claimed are both payable to the order of the Louisville,
New Orleans & Texas Railway Company, and bear eight per
cent. per annum interest from their date.     They are indorsed,
without recourse, by the Yazoo & Mississippi Valley Railway
Company, "by G. W. McGinnis, land commissioner," not
saying to whom indorsed; so, if validly so indorsed, the notes

became transmissible from hand to hand by mere delivery, and might be sued on by any holder. The only other indorsements on them are these: "Transferred to R. M. Kyle, guardian, as collateral security to secure note due him as guardian for Barney E. Kyle. 2/8/'95. [Signed] Burbridge & Houston." "Transferred, without recourse, to T. T. Bryant, guardian. [Signed] R. M. Kyle, guardian." It is clear that, if the Yazoo & Mississippi Valley Railway Company had title, and indorsed the notes in blank through McGinnis, then the indorsement to T. T. Bryant, guardian, amounts to nothing. R. M. Kyle, the holder, could have stricken that out at any time pending the proceeding, or he could have proceeded, as holder, without striking it out. *Nance* v. *Gregory*, 6 Lea, 343–346; *McAlister* v. *Jerman*, 32 Miss., 142; *Chaffe* v. *Wilson*, 59 Miss., 42; *Boyd* v. *Warmack*, 62 Miss., 536.

Well, the Yazoo & Mississippi Valley Railway Company did have title by articles of consolidation with the Louisville, New Orleans & Texas Railway Company, in evidence, vesting the former with all "the rights, powers, privileges, immunities and franchises, and all the railroads, real and personal estate, easements, fixtures, equipments, choses in action, and property and assets of every kind, nature, or description;" and Mr. McGinnis is made a witness, and testifies that he signed the indorsement for the company, and had authority to do so as its land commissioner. A railroad land commissioner in possession of the land notes of his company may well be presumed to have the power of transferring them to an innocent purchaser for value. Besides, the signature of the company is not denied under oath. The fact that the bill waives answer under oath does not dispense with such an oath as that section requires. *Woolen Mills* v. *Rollins*, 75 Miss., 253, s. c. 22 South., 819. It is not perceived that Pardee and Crolius have any connection with these notes whatever. Certainly there is no evidence that they ever had, or made any assignment of them. Certainly the complainant was in possession of the notes indorsed in

blank, and so payable to the bearer. The burden of proving their connection with, or interest in, the notes is on defendants. As to Burbridge & Houston and Pearson, they appeared and disclaimed all interest; but this was unnecessary, as the law presumes title in the holder of a note indorsed in blank.

*Affirmed.*

Whitfield, C. J., delivered the following concurring opinion.

I concur in. the result reached on the ground solely that we have here a Tennessee contract and a Tennessee statute, and the last decision of the Tennessee supreme court construing that statute, and that such construction is binding on us, since neither the statute law nor the decision is against any public policy of this state. I regard the reasoning of the Tennessee supreme court as unsound on its own previous decisions and the statutes. But it is their statute, construed by their highest judicial tribunal, and that concludes. us, since no law or public policy of ours is violated.