## TAYLOR *v.* JULIENNE.

(Division A. Nov. 22, 1937. Suggestion of Error Overruled January 3, 1938.)

[177 So. 19. No. 32700.]

Green, Green & Jackson, of Jackson, for appellant.

F. W. Bradshaw, Robert Burns, Jr., and Flowers, Brown & Hester, all of Jackson, for appellee.

Argued orally by **Forrest B. Jackson**, for appellant, and by **Robert Burns, Jr.**, and **Clyde Hester**, for appellee.

, **McGowen, J.,** delivered the opinion of the court.

On October 19, 1934, the Citizens Savings Bank & Trust Company exhibited its bill of complaint against R. M. Taylor which, in brief, sought to recover a balance due it on a note, with interest and attorney's fees, and alleged that by virtue of a certain resolution entered by it on its minutes granting a loan to R. M. Taylor, S. C. Hart, and Mrs. M. T. Lampton it accepted a deed as security for this loan—as a mortgage or security for the several debts of Taylor et al. The deed was executed by Central Lumber & Coal Company to Citizens Bank, as we shall hereafter denominate it. The Citizens Bank asked that the one-half interest of R. M. Taylor in the deed be subjected to the payment of his debt and a decree over. The resolution of the Citizens Bank, a copy of the renewal note of Taylor, dated December 28, 1931, written request for loan extension, and the deed from Central Lumber & Coal Company to the bank, were made exhibits to the bill.

The appellant Taylor answered with a plea and a very lengthy demurrer incorporated therein. The gravamen of the defense made by the various pleadings was that no mortgage or equitable lien was created by the written resolution, but that the paper was an effort to create an active trust in the Citizens Bank, the paper not being acknowledged or recorded, and that the active trustee had not discharged its duty as such thereunder, and for this, and many kindred reasons arising from that premise, he was not liable to the bank for his note.

At a subsequent date Julienne, on his written petition, was allowed to intervene as receiver of said bank, as a party complainant to the original bill. No objection was interposed thereto. The case was before the same chancery court which appointed Julienne receiver of the bank.

After hearing the pleadings and evidence, the court granted the relief prayed for in the bill, finally ordered a commissioner to sell the land, who reported the sale and had same confirmed and the net proceeds credited to Taylor. A personal decree, in effect, was entered against him for the balance found due in favor of the receiver of the Citizens Bank. Taylor prosecutes an appeal from the final decree to this court.

The complainant offered in evidence a copy of the following resolution, as appeared on the minutes of the bank:

"Whereas, R. M. Taylor, S. C. Hart and Mrs. M. T. Lampton desiring to purchase from Central Lumber and Coal Company certain land in the George Whitfield Survey in the City of Jackson at the sum of $27,034.75 of which $10,000.00 is to be advanced by the said parties in cash, have arranged to borrow the sum of $17,034.75 from this bank to be used in fully paying the purchase money for said land, and have agreed to execute and deliver to this bank their several promissory notes as follows:

"Note of R. M. Taylor due          for $8,517.38
"Note of S. C. Hart due            for   4,258.69
"Note of Mrs. M. T. Lampton, due    for   4,258.68

"Whereas, the said purchasers have, for purpose of securing the said sum of $17,034.15 and interest thereon at 6% per annum so to be advanced by this bank, procured the said land and property, being a tract of land situated in the City of Jackson, Mississippi, and briefly described as:

" 'A certain tract of land situated at the Northwest corner of the tract of land in the City of Jackson, which is bounded in the North by a street formerly known as the Livingston Road and East of Mill Street, being a part of the George Whitfield Survey, together with certain easements and appurtenances belonging to the said tract of land and to be conveyed to the above named parties or to a purchaser designated by them.'

"to be conveyed to this bank and have agreed that the same should be managed, subdivided, sold, disposed of and/or conveyed by this bank in its discretion and that this bank should through its authorized officers execute all contracts, plats, deeds and/or releases and things necessary or proper,—in the opinion of such officers,—for the proper management and disposal of the said property and especially have agreed that this bank should, out of the proceeds of any sale of the said property, first pay to itself and fully discharge any and all sums due or to become due to it by any the said parties, purchasers of said land, as principal or interest of the loans severally made to them together with the reasonable legal and other expenses involved in the handling and disposal of said property and should divide the net remaining proceeds of such sale or disposal of said property to the said R. M. Taylor, S. C. Hart and Mrs. M. T. Lampton in the proportions respectively one-half, one-fourth and one-fourth; therefore be it,

"Resolved, that this bank consents to accept said conveyance of land, to make said loan to the purchasers and to sell, manage and dispose of said property and collect the proceeds arising therefrom and to dispose of the proceeds as hereinbefore set out; and, further, that Thad B. Lampton, President and/or S. C. Hart, Vice President and Cashier of this bank are hereby expressly authorized to make, execute, deliver and enter into in the name of this bank all necessary and proper contracts, plats, surveys, deeds and releases and other instruments and things which they may think proper in connection with or in furtherance of the management and disposal of the said property and the distribution of any funds and/or proceeds arising therefrom.

"I, S. C. Hart, Vice President and Cashier of the Citizens Savings Bank and Trust Company, Jackson, Mississippi, do hereby certify that the foregoing is a true and correct copy taken from the Minutes of the

Citizens Savings Bank & Trust Company at a meeting duly held December 17, 1927.''

It offered a note payable to Citizens Bank, or bearer, for $8,644.15, dated December 28, 1931, due March 28, 1932, bearing 6 per cent. interest from December 27, 1931, and signed by R. M. Taylor. Written in the note were the following words: ''Balance purchase price of land Mill Street title in Citizens Savings Bank & Trust Co., Trustee.'' Indorsed on the note were eight payments on principal and interest made at sundry times during the year, and the signature of the bank in blank. There was also in evidence a written extension of time signed by R. M. Taylor, as follows:

''I hereby request and accept the extension to March we 28, 1933 of the balance of $8400.00 on the principal of my our note for $8644.15 dated 12/28/31, which is secured by deed of trust recorded in Book 202 page 112 of the Trust Deed Record of Hinds County, Mississippi, and the lien created by such deed of trust shall remain in full force to secure the payment of said note.

''The interest on the above mentioned note has been paid to 12/28/32.

'' [Signed]    R. M. Taylor.

''Dated 12/28/32.''

The deed, dated December 23, 1927, from Central Lumber & Coal Company to the bank, was an absolute deed conveying by accurate description lands later shown to abut Mill street. No mention of Taylor, Hart, and Mrs. Lampton is contained therein.

The following letter signed by Taylor, Hart, and Mrs. Lampton was offered in evidence:

''Citizens Savings Bank & Trust Company
''Jackson, Mississippi
''September 7, 1928.

"Citizens Savings Bank & Trust Company
  "Jackson, Miss.
"Gentlemen:
    "This is to authorize you to execute a deed to the City of Jackson for ten feet on the West side of property held by you as trustee for benefit of M. T. Lampton, R. M. Taylor and S. C. Hart.
      "Yours very truly
                "M. T. Lampton
                    "by Thad B. Lampton
                "S. C. Hart
                "R. M. Taylor"

And the deed from the bank to the city was also offered, as was a gas lease contract executed as a community lease with others by the bank to Love Petroleum Company, including the Mill street land, together with a letter from Love Petroleum Company to R. M. Taylor in which it was stated that Taylor, Hart, and Lampton owned land between North Mill and Wilson streets.

R. M. Taylor, as a witness for complainant, testified that he approached Hart with reference to the purchase of this land, that he did not know the owner of the land, and that he with Hart interested Mr. Lampton, husband of Mrs. Lampton, in it. Taylor agreed to take a half interest in the property, Hart and Mrs. Lampton each a one-fourth interest; he to pay $5,000 and give his note for his part of the balance, $8,400, and Hart and Mrs. Lampton to pay $2,500 each and give their notes to the bank for their part of the balance. He admitted that an attorney was consulted, and said that he paid one-half of that fee for drawing the deed and resolution heretofore referred to. He said that he did not see the resolution until 1929; that he continued the payments on his note to the bank until 1933, and thought he had a deed to show his interest, and understood that the bank was to have security for the amount of his note. For five or six years he often tried to sell the property, and with

Hart and Lampton he paid for a survey thereof, rented the land to Brown, and collected rents and paid Hart and Lampton their part, and participated in the gas and oil lease. He further stated that he thought he owned a half interest in this property, subject to a lien of some kind to the bank to secure $8,600, which he had borrowed from it. He renewed the note from time to time before 1929 and afterwards until 1931. He insisted that the bank did not give him anything, although he thought he had a deed, and that the bank held a deed of trust, and that it was his opinion that the bank signed a deed to the city because it had a lien. He was city commissioner during all these transactions.

S. C. Hart as a witness for complainant, testified that Taylor interested him and Mr. Lampton in this deal; that he knew who owned the land, and after they decided to go into the matter as a speculation, he and Taylor went to an attorney and told him what they desired, and that the attorney drew up the resolution and deed; that later the cash was paid ratably and their several separate notes were executed for the balance, Taylor's being around $8,600; that Ricketts drew the deed, all of which Taylor approved; and that they told Ricketts that they wanted to secure the bank for the balance of the purchase price. Hart paid his note within a few days. Taylor was regarded by the witness as being the leading spirit in trying to sell the land. The land was unimproved and salable mainly as a factory site and they agreed that in event of the sale by them the bank would execute deeds upon the request of Taylor, Hart, and Mrs. Lampton; that the matter was handled in that manner for convenience and the bank was not to convey the land except upon the request of Hart, Taylor, and Mrs. Lampton. Hart paid his note on December 30, 1927, and Mrs. Lampton paid hers in 1934. The bank had not executed a deed to them nor been requested so to do by either of them. The Citizens Bank paid the full amount of the

purchase price to the Central Lumber & Coal Company by check.

Mrs. Lampton understood the resolution and deed as being security to the bank for her loan and that because thereof she did not have to execute a deed of trust. She went into the deal because she thought Taylor was a good real estate man and she would make money. She said that some time later she went to the City Hall, met Taylor there, and in discussing their venture he said: "I would be glad to give my notes right now—to give my interest right now in the property for my note to the bank." To which Mrs. Lampton replied, "I would, too, but they won't take it." This conversation was two or three years before the trial in 1936. Taylor denied making this statement.

In rebuttal appellant offered in evidence a deed of trust executed by Central Lumber & Coal Company in favor of Currie, securing $15,000, which included the Mill street land and other property. This deed was canceled on December 28, 1927. He also offered a deed of trust, which included the Mill street land, from the same corporation to the Citizens Bank for $23,460, and which was canceled on June 29, 1928. It is uncontradicted that at the date of the deed here involved the mortgagor owed the Citizens Bank $6,380.

On the facts we are of the opinion that the court below was warranted in finding that Taylor knew that he had borrowed the money from the bank and caused the deed to be executed by the grantor to the bank as security for a loan to him of $8,517.38; that he knew who owned the land before the deed was executed; and that when he executed the note to the bank he was aware of the essential facts. We are further of the opinion that the court was warranted on the conflict of the evidence in finding that Taylor knew that he did not have a deed, and this is based on Taylor's letter to the bank requesting it to convey ten feet to the city to be used as a part

of Mill street; Taylor was at that time a city commissioner, and the city was preparing to pave that property. In addition to that, he with his associates paid the taxes on this land for four or five years; he caused the deed and resolution to be drawn by an attorney, and paid his share therefor and afterwards paid his share for having a survey and map made of the property with the view of selling lots therefrom.

It is argued that the Citizens Bank could not maintain an action on the note which was payable to the bank ''or bearer'' and indorsed on the back thereof in blank by the bank. It was a bearer note, and the bank was in possession of it and brought suit upon it. All the evidence in this case shows that the bank was in full, complete possession of the note and before the trial all of its indebtedness to a federal agency had been paid. The bank had placed this note and much of its assets with a federal agency as security for a loan, but the agency had put the bank in possession of this note. ''The holder of a note, indorsed in blank, who has indorsed it to another, may strike out his own indorsement before or after suit, or he may sue and recover as holder without striking out same.'' Kendrick v. Kyle, 78 Miss. 278, 28 So. 951. There is no merit in this contention.

It is contended that the court erred in permitting Julienne, receiver of the bank, to intervene as a complainant in this suit. The petition to intervene was presented by the receiver to the chancery court which had appointed him, and the court permitted him to intervene. That was sufficient authority to prosecute the suit. By the order of the court and the statutes of the state the receiver was vested with title to the assets, and in this situation there seems to be ample authority for the same court to permit Julienne, as receiver, to prosecute the suit. Besides, there was no objection on the part of the appellant.

■ The main question presented in this case and the one that is decisive of all the points raised is whether, as contended by appellant, the resolution prepared by Taylor's attorney and entered upon the minutes of the bank on December 27, 1927, creates a trust. Appellant contends that on its face the resolution shows that the deed accepted by the bank by virtue of such resolution did not constitute a mortgage or security for money. It is conceded, however, that if it was a declaration of trust, then it must fail for the reason that it was not acknowledged and recorded as required by section 3348, Code 1930. We do not deem it necessary to make an extended analysis of this resolution, save to say that it shows that the Central Lumber & Coal Company was the owner of certain lands, and that Taylor, Hart, and Mrs. Lampton desired to purchase these lands for $27,034.75, and that they desired to borrow $17,034.75 from the bank and to pay $10,000 in cash, the proceeds of the loan and the cash payment to be used in fully paying the purchase money, and that the parties were to pay in the ratio: Taylor one-half, Hart one-fourth, and Mrs. Lampton one-fourth. The resolution clearly shows that the bank was a lender and Taylor a borrower for the purpose of purchasing the land which was indisputably intended, as stated therein, to stand as security for the amount the bank had loaned to these three parties. It is true that the instrument recites that the bank could convey in its discretion, but when the instrument is taken as a whole the inescapable conclusion is that the deed was executed to the bank as security only for the purchase money loaned by it to Taylor et al. Appellant is put in the position of arguing here that the bank embarked on this land deal as a matter of speculation by which it was to receive only the interest on the money loaned, and if the venture proved to be a "good buy," then Taylor et al. would take the profits; but if it proved to be a bad investment, the bank was to take the loss.

In addition to this, the note given to the bank by Taylor for his one-half interest in the loan is written evidence of the intention of the parties to have this deed executed by the grantor to the bank as a mortgage or security for the loan. The note was in writing, the renewal note given by Taylor to the bank in 1931, at a time when he knew or ought to have known, and is charged with knowing that the bank was treating this deed as security for its loan, so stipulated, and in the certificate of renewal the deed is designated as a deed of trust and the book and page of its recordation in the public records is given.

This resolution, the contemporary note of Taylor, the certificate of renewal nearly four years later signed by Taylor, his letter to the bank requesting it to convey ten feet of land to the city, constitute ample written evidence of the intention of all the parties that the deed was to be in fact a mortgage and security for the loan, whether we say the bank was in constructive possession by virtue of its deed, or Taylor et al. were in constructive possession by virtue of their acts of dominion or ownership of the land; it was unimproved property. This resolution and the other written evidences of the nature of the transaction to which we have referred, although unrecorded, were competent as evidence to establish the real nature of the deed, independent of the oral evidence. Barkwell v. Swan, 69 Miss. 907, 13 So. 809. The oral evidence as to the action of the parties after the written instruments had been executed with the knowledge and consent of Taylor and his associates was competent in order to show how the parties treated the deed and resolution, and the whole transaction, especially with reference to the ambiguous language that the bank might convey the property in its discretion. It is sufficient to say that Taylor's every act indicated that he understood the situation and regarded the deed as a security for his part of the loan, paid as a part of the purchase price

of the land. The court correctly held on the documentary evidence that the deed here in question was in fact a mortgage, and the parties so treated it from December 17, 1927, until March, 1933. Taylor was constantly paying small sums on his note and kept the interest paid thereon, and this litigation arose when the Citizens Bank refused to accept his wife's check as a payment on the note; the check being drawn on another bank which was under restriction.

The decree of the court below ordering the sale of Taylor's interest in this land by a commissioner of the court is approved, and the application by the court on confirmation of that sale of the net proceeds of the sale of the land as a credit on the decree against Taylor is approved. The decree of the court below dated November 16, 1936, found that the bank was entitled to recover from Taylor the sum of $7,214.31, which was found to be the balance due after crediting the net proceeds of the sale of Taylor's interest in the land, to which the appellee is entitled to a decree with 6 per cent. interest per annum from the date of the entry of the decree in the court below.

Affirmed.